ORIGINAL

FILED
APR 9 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**717 Madison Place, NW, Room 101**
**Washington, DC 20005**

| | | |
|---|---|---|
| **HUMPHREY A. TAYLOR,** | ) | |
| | ) | |
| **Complainant,** | ) | |
| | ) | |
| **- v. -** | ) | **No. 07-230 C** |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**COMPLAINT**

1. ***Comes now***, the Complainant, Humphrey A. Taylor, through his undersigned counsel to move the Court to order the Respondent to pay an award granted to the Complainant by the US Equal Employment Opportunity Commission (EEOC) against the Respondent the US Department of Homeland Security (DHS). Whereby, the DHS has refused to pay in accordance with said order and is in violation of *Title 42 USC § 2000e et. seq.*

## I. *Jurisdiction*

2. Pursuant to *Title 28 USC § 1507*, the US Court of Federal Claims is vested with jurisdiction over the Complainant's claims.

## II. *Venue*

3. Venue in Washington DC is proper in that the Respondent is the US of America's DHS with its headquarters in Washington, DC.

## III. *Parties*

4. The Complainant is an American citizen who currently is an employee of the DHS and resides in El Paso, Texas, and my be served with process, pleadings and

motions through his undersigned attorney Lorenzo W. Tijerina located at 1911 Guadalupe Street, San Antonio, Texas 78207, telephone number (210) 231-0112, facsimile number (210) 212-7215.

5. The Respondent is the DHS with its main office located at Washington, DC, 20520. The attorney for the US of America and the DHS is the Attorney General of the United States, the Honorable Alberto P. Gonzalez who can be served with service of process, pleadings and motions in care of the US Department of Justice, 950 Pennsylvania Avenue, NW, Room 4400, Washington, DC 20530-0001.

## IV. ***Procedural History***

6. On or about July 15, 2004, the EEOC's Administrative Law Judge (ALJ), in a case styled *Humphrey A. Taylor v. Thomas J. Ridge, Secretary of the Department of Homeland Security*, EEOC No. 140-2003-08401X, Agency No. I-02-H026, awarded the Complainant compensatory damages in the form of back pay from June 3, 2001, pursuant to *29 CFR § 1614.501*, to be tendered immediately, and non-pecuniary compensatory damages in the amount of thirty five thousand dollars ($35,000.00). The DHS was ordered to immediately promote the Complainant to an instructor's position at the Federal Law Enforcement Training Center (FLETC) to which the Complainant had been discriminated against by not being initially selected as an instructor. Instead of complying with any part of the ALJ's decision, the DHS elected to appeal the ALJ's decision to the EEOC's Office of Federal Operations (OFO). (*See* Exhibit marked C-1, copy of the EEOC's ALJ's decision dated July 15, 2004).

7. On May 31, 2006, the OFO rendered its decision affirming the EEOC's ALJ's decision and award. The OFO specifically ordered the DHS to comply with the EEOC's

ALJ's decision:

> (1) The Agency shall appoint Complainant to the Supervisory Border Patrol Agent, GS-1896-12, position in Charleston, South Carolina, or other location agreeable to Complainant, retroactive to June 3, 2001, with relocation expenses.
>
> (2) The Agency shall determine the appropriate amount of back pay with interest and other benefits due Complainant for the period from June 3, 2001, pursuant to *29 C.F.R. § 1614.501*, and tender that amount to Complainant, no later than sixty (60) calendar days after the date this decision becomes final. The Complainant shall cooperate in the Agency's efforts to compute the amount of back pay and benefits due, and shall provide all relevant information requested by the Agency.
>
> (3) The Agency shall tender to Complainant non-pecuniary compensatory damages in amount of $35,000.00.
>
> (4) Within sixty (60) calendar days after the date that this decision becomes final, the Agency shall take corrective, curative and preventive action to ensure that discrimination does not recur. This includes, but is not limited to, training for the relevant (*See* Exhibit marked C-2, a copy of the OFO's order dated May 31, 2006).

8. On or about June 30, 2006, the Respondent filed a motion for reconsideration before the OFO, which triggered the Complainant's undersigned counsel to respond by moving to dismiss the Respondent's motion as vacuous and fundamentally defective at law and in-fact.

9. On or about August 31, 2006, the OFO granted the Complainant's motion to dismiss the Respondent's motion for reconsideration and affirmed the EEOC's ALJ's decision dated July 15, 2004.

10. After the Respondent's failure to pay the award as ordered by the OFO, on or about September 23, 2006, the undersigned posted a letter demanding that the

Respondent pay as ordered. (*See* Exhibit marked C-3, copy of the Complainant's demand letter posted to the Respondent and the EEOC).

11. In February 2007, the Complainant received his non-pecuniary compensatory damages in the amount of $35,000.00; but, he has not received his back pay with interest or his promotion to a GS-12 as ordered by the EEOC's ALJ and the OFO's affirmation.

## V. *Operative Facts*

12. As of this date the Respondent has failed to timely perform as ordered by the OFO, the DHS still owes the Appellant his back pay and front pay, with interest and all other benefits, including the GS-12 promotion, which the DHS was ordered to pay the Complainant pursuant to the EEOC's ALJ's order and the OFO's affirmation.

## VI. Claim(s)

13. The Complainant alleges that from July 15, 2004, to the present the DHS has intentionally, maliciously and wantonly failed to enforce any part of the EEOC's AJ's decision dated July 15, 2004.

14. Effectively, the Complainant alleges that the DHS owes the Complainant not less than ninety four thousand three hundred sixty six dollars ($94,366.00) summarily calculated as follows:

| | |
|---|---|
| $ 2,856.00 | for the year 2001, interest and retirement benefits ***not*** included |
| 14,729.00 | for the year 2002, interest and retirement benefits ***not*** included |
| 15,988.00 | for the year 2003, interest and retirement benefits ***not*** included |
| 18,941.00 | for the year 2004, interest and retirement benefits ***not*** included |
| 20,272.00 | for the year 2005, interest and retirement benefits ***not*** included |
| 21,580.00 | for the year 2006, interest and retirement benefits ***not*** included |
| ***$ 94,366.00*** | ***Minimum Total Due in Back Pay without interest and retirement benefits do not include 2007 calculations.*** |

15. The estimated $94,366.00 does not include interest to be taxed by the Court. Nor, does the $94,366.00 include the current cost and expense for the present litigation before

this Court. Said cost and expense is contracted on a contingent bases at thirty three percent (33%) of the total amount of back pay, with interest, and other benefits due the Complainant.

WHEREFORE, premises considered, the Complainant prays that this Court find that the Respondent has failed to make the Complainant whole as ordered by the EEOC's OFO decision dated May 31, 2006.

Respectfully submitted,

Lorenzo W. Tijerina, Attorney for
Complainant Humphrey A. Taylor
1911 Guadalupe Street
San Antonio, Texas 78207
Telephone No. (210) 231-0112
Facsimile No. (210) 212-7215

**VERFICATION**

I, Humphrey A. Taylor, being first duly sworn under oath, presents that I am the Complainant in this action for my claim against the United States of America, that I know the contents of the instant Complaint, and that the information contained therein is true to the best of my personal knowledge and belief.

H. A. Taylor

Humphrey A. Taylor
3017 Stone Lake
El Paso, Texas 79936

3/26/07
Date

**SUSCRIBED AND SWORN before me this** 26th **day of March, 2007**

ESTELA CORRAL
NOTARY PUBLIC
STATE OF TEXAS
My commission expires
April 26, 2007

Estela Corral
**Notary Public**

My Commission Expires: April 26, 2007

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Charlotte District Office**

129 West Trade Street, Suite 400
Charlotte, NC 28202
(704) 344-6682
TTY (704) 344-6684
FAX (704) 344-6734 & 6731

| | | |
|---|---|---|
| IN THE MATTER OF: ) | | |
| ) | | |
| Humphrey A. Taylor, ) | EEOC No.: | 140-2003-08401X |
| Complainant, ) | | |
| ) | | |
| v. ) | | |
| ) | Agency No.: | I-02-H026 |
| Thomas J. Ridge, ) | | |
| Secretary, ) | | |
| Department of Homeland Security, ) | | |
| Agency. ) | | |
| ) | | |

## DECISION

### I. INTRODUCTION

On June 25, 2004, the above-captioned complaint was heard before Kelly A. Davis, Administrative Judge, Charlotte District Office, Equal Employment Opportunity Commission, via telephone conference call. Humphrey A. Taylor (hereinafter, Complainant) alleged that he was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. It is upon the totality of the evidence that the following decision is based.

### II. APPEARANCES

The Complainant was represented by Henry U. Mesa; the Agency was represented by Peter Gregory, Esq.

### III. CLAIM

Whether or not the Agency discriminated against Complainant based on race (Hispanic) and religion (Baptist) when he was not selected for the position of Supervisory Border Patrol Agent, GS-1896-12, pursuant to Vacancy Announcement Nos. HQ-00-46-007 and HQ-00-46-009?

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Charlotte District Office**

129 West Trade Street, Suite 400
Charlotte, NC 28202
(704) 344-6682
TTY (704) 344-6684
FAX (704) 344-6734 & 6731

| | | |
|---|---|---|
| IN THE MATTER OF: ) | | |
| Humphrey A. Taylor, Complainant, ) | EEOC No.: | 140-2003-08401X |
| v. ) | | |
| Thomas J. Ridge, Secretary, Department of Homeland Security, Agency. ) | Agency No.: | I-02-H026 |

**DECISION**

## I. INTRODUCTION

On June 25, 2004, the above-captioned complaint was heard before Kelly A. Davis, Administrative Judge, Charlotte District Office, Equal Employment Opportunity Commission, via telephone conference call. Humphrey A. Taylor (hereinafter, Complainant) alleged that he was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. It is upon the totality of the evidence that the following decision is based.

## II. APPEARANCES

The Complainant was represented by Henry U. Mesa; the Agency was represented by Peter Gregory, Esq.

## III. CLAIM

Whether or not the Agency discriminated against Complainant based on race (Hispanic) and religion (Baptist) when he was not selected for the position of Supervisory Border Patrol Agent, GS-1896-12, pursuant to Vacancy Announcement Nos. HQ-00-46-007 and HQ-00-46-009?

Exhibit C-1

## IV. FINDINGS OF FACT[1]

1. At the time this complaint arose, Complainant was employed by the Agency as a Senior Border Patrol Agent, GS-1896-11, at its El Paso Station, in El Paso, Texas. IR at Exh. 5.

2. On November 17, 2000, the Agency issued Vacancy Announcement Numbers 00-46-007 and 00-46-009 for the position of Supervisory Border Patrol Agent (Course Development Instructor), GS-1896-11/12. The announcements closed on December 1, 2000, and the positions were located at the Agency's Border Patrol Academy in Charleston, South Carolina. The duties of the positions included designing, developing and coordinating courses, workshops, and seminars pertinent to the operational activities of the Immigration and Naturalization Service in the specialized area of physical training and conducting basic training instruction for Border Patrol Agents; planning new, or revising existing, courses for use throughout the Academy based on knowledge of subject matter and anticipated needs as a result of new developments in subject matter area; conducting research and fact gathering in a variety of subject matter areas to assure that courses and instructional material are current, accurate and consistent with new developments in the field; conducting classes in a wide variety of subject matter areas pertinent to the Border Patrol and the Immigration and Naturalization Service and evaluating students' academic progress through established methods and techniques, etc.; participating in the selection and assignment of instructors to specific classes within the session(s); planning, assigning, and reviewing the daily work of the detailed instructors; and monitoring the instructors' performance. The position required specialized experience in law enforcement or responsible work that demonstrated the ability to: (1) make arrests and exercise sound judgment in the use of firearms; (2) deal effectively with individuals or groups of persons in a courteous, tactful manner in connection with law enforcement matters; (3) analyze information rapidly and make a timely decision or take prompt and appropriate law enforcement action in light of applicable laws, court decisions, and sound law enforcement procedures; and (4) knowledge of the instructional methods used for law enforcement training development and delivery. In addition, the specialized experience must have included interpreting and enforcing Immigration and

---

[1]Hereinafter, IR = Investigative Report; Exh. = Exhibit; HT = Hearing Transcript.

Naturalization Service or comparable laws, rules and regulations. Finally, prior experience in a primary law enforcement position or a fire fighting position or equivalent experience outside the Federal government was a basic qualification of the position. IR at Exh. 11.

3. In order to apply for the position, applicants were to submit the following information: (1) a resume or other written application; (2) an Immigration & Naturalization Service Applicant Survey, Form G-942; (3) a copy of their SF-50, Notification of Personnel Action; (4) the most recent annual Performance Appraisal; and (5) a completed Qualification Declaration and Inquiry Statement pertaining to conviction of a misdemeanor crime of domestic violence within the meaning of the law. IR at Exh. 11.

4. Complainant submitted an application in response to the vacancy announcements. His application reflects that he has been a Senior Border Patrol Agent, GS-11, since May 1998; and that he was a Border Patrol Agent, GS-9, from May 1991 to April 1998. His application further reveals that he has a Bachelor's Degree from the University of Texas at El Paso, and that he is certified as an Emergency Medical Technician. His most recent performance appraisal reflects an overall rating of "Outstanding," with outstanding ratings on three of five critical elements (conducts all other operations, prepares reports and documents, and proper care and use of Government equipment), excellent ratings on the remaining two critical elements (intelligence, anti-smuggling, prosecution, criminal alien program and sanctions and interpersonal relations), and an outstanding rating on the non-critical element of preparing various reports, forms, memoranda and other documents required. IR at Exh. 12.

5. Eric J. Farrar (White, religion not identified) also submitted an application in response to the vacancy announcements. His application reveals that he has worked for the Agency as a Senior Border Patrol Agent, GS-11, since May 1999; and as a Border Patrol Agent, GS-5/7/9, from July 1996 until May 1999. Farrar's application further reveals that he possesses an Associate's Degree in Criminal Justice. His most recent performance appraisal reflects an overall rating of "Outstanding," with outstanding ratings on two of four critical elements (field operations and

professional accountability), excellent ratings on the remaining two critical elements (alternate assignments/collateral duties and technical knowledge), and an excellent rating on the non-critical element of the appraisal concerning written communications. IR at Exh. 13.

6. Douglas N. Noel (White, religion not identified) also submitted an application in response to the vacancy announcement. His application reveals that he has worked for the Agency as a Senior Border Patrol Agent, GS-11, since October 1995, with the exception of two months in the year 2000 when he served as a Supervisory Border Patrol Agent, GS-12; and as a Border Patrol Agent, GS-5/7/9, from November 1985 until October 1995. Noel's application does not reflect his educational background. His most recent performance appraisal reflects an overall rating of "Outstanding," with outstanding ratings on all three critical elements,[2] and outstanding rating on the non-critical element of problem identification, and excellent ratings on the two remaining non-critical elements.[3]

7. Jack W. Tanner (White, religion not identified) also submitted an application in response to the vacancy announcement. His application reveals that he has worked for the Agency as a Border Patrol Agent, GS-5/7/9, since September 1986; and had prior experience as a non-federal law enforcement officer from June 1976 until July 1979. Tanner's application reflects that he has some college, with courses in Police Science and Criminal Justice. His most recent performance appraisal reflects an overall rating of "Excellent," with outstanding ratings on two of four critical elements,[4]

---

[2]Those critical elements are: (1) personally complies with and insures through effective systems of control, the compliance of trainee with integrity standards and all applicable laws, regulations and instructions governing employee standards of conduct; (2) provides instruction for basic classes; and (3) monitors job performance of each trainee under his direct supervision. IR at Exh. 14.

[3]Those non-critical elements are: (1) fully supports and implements the department's and Service's Affirmative Actions and Equal Opportunity efforts with respect to trainees under his supervision; and (2) prepares reports, documents, course material, lesson plans, etc. to assure the orderly effective function of the Border Patrol Academy. IR at Exh. 14.

[4]Those critical elements are: (1) conducts the following operations (Freight Train Check, Sensor Response, Traffic Check, Transportation Check, Signcutting, and IDENT/Transport duties) in accordance with regulations, instructions and policies for the purpose of detecting illegal activity

and excellent ratings on the remaining two critical elements[5] and the non-critical element of properly maintaining, operating, and caring for government equipment and property.

8. Pursuant to Vacancy Announcement Number 00-46-007, Complainant and Noel both qualified for the Selection Certificate for the position at the GS-12 level. Pursuant to Vacancy Announcement Number 00-46-009, Tanner qualified for the Selection Certificate at the GS-11 level and Complainant and Farrar qualified at the GS-12 level. The Selection Certificates were submitted to Thomas Walters (refused to identify race or religion), Chief Border Patrol Agent, GS-1896-15. IR at Exh. 11.

9. Walters selected Noel for a position under Announcement Number 00-46-007, and Tanner and Farrar under Announcement Number 00-46-009. IR at Exh. 11. Farrar's promotion was effective June 3, 2001, Noel's on June 17, 2001, and Tanner's on July 29, 2001. IR at Exh. 11.

10. Following notification that he was not selected for the position, Complainant contacted an EEO Counselor on September 6, 2001. IR at Exh. 3.

11. Complainant filed a formal complaint concerning his nonselection on December 5, 2001. IR at Exh. 1.

## V. APPLICABLE LAW

The burden of proof in discrimination cases is generally allocated according to the standard established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This case set forth a three-

---

and preventing the smuggling and illegal entry of aliens into the United States; and (2) conducts and maintains effective relationships with other branches of I&NS, local state and Federal agencies, foreign officials, officials of private industry and the general public. IR at Exh. 15.

[5]Those elements are: (1) fills out required Service Forms, creates files, and prepares other reports and documents as required by policy, administrative or criminal procedures; and (2) complies with oral and written directives from management. IR at Exh. 15.

tier test for determining whether there has been discrimination in violation of Title VII. The complainant has the initial burden of showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not such actions were based on discriminatory criteria. Once a prima facie case has been established, the burden of going forward shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. If the employer articulates such a reason, the burden is then on the complainant to prove, by a preponderance of the evidence, that the legitimate reason offered by the employer was not its true reason, but a mere pretext for discrimination. *See St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer discriminated. *Reeves v. Sanderson Plumbing Products*, 120 S. Ct. 2097 (2000).

## VI. ANALYSIS & FINDINGS

Complainant can establish a prima facie case of discrimination with regard to his non-selection by showing that: (1) he is a member of the protected group(s); (2) he applied and was qualified for the position; (3) he was not selected for the position; and (4) he was accorded treatment different from that given to a person otherwise similarly situated who is not a member of his protected group(s). *Keyes v. Secretary of the Navy*, 853 F.2d 1016, 1023 (1st Cir. 1988); *Cuddy v. Carmen*, 762 F.2d 119, 122 (D.C. Cir.), cert. denied, 474 U.S. 1034 (1985). I find that Complainant has established a prima facie case of race discrimination as he has demonstrated that he is a member of the protected group, he applied and was found qualified for the position, he was not selected for the position, and persons outside of his protected group were selected. I also find that Complainant has established a prima facie case of discrimination based on religion as the religions of the selectees have not been identified.

The question becomes then whether the Agency has articulated a legitimate, nondiscriminatory reason for Complainant's non-selection. While the Agency's burden of production is not onerous, it must nevertheless provide a specific, clear, and individualized explanation for the treatment accorded Complainant. Complainant is entitled to some rationale for his non-selection that provides

him with an opportunity to satisfy his ultimate burden of proving that the Agency's explanation was a pretext for prohibited discrimination. *Wilson v. Department of Veterans Affairs*, EEOC Appeal No. 01995055 (December 21, 2001). I find that the Agency has failed to meet its burden of articulating a legitimate, nondiscriminatory reason for Complainant's non-selection. The selecting official, Chief Border Patrol Agent Thomas Walters, testified both in his affidavit and at the hearing that the three selectees were recommended to him for selection. Assistant Chief Patrol Agent Jorge Gutierrez testified in his affidavit that he reviewed the applications and discussed the candidates with Training Operations Supervisor John Steblein and then made recommendations to Deputy Chief Patrol Agent Ronnie Myers. He further explained that the criteria used to evaluate the candidates included details to the Academy, training experience, education, time in service, supervisory experience, supervisory evaluation, and overall work experience. Gutierrez could not remember specific information about any of the candidates, but testified that Tanner, Noel, and Farrar were evaluated to be the best candidates for the positions. At the hearing, Gutierrez testified that he received the Selection Certificates and, after reviewing the applications, narrowed the list down to the five or six best candidates. At that point, he asked Steblein to review the applications and the candidates. Steblein then narrowed Gutierrez's list of 5-6 candidates to three candidates, Tanner, Noel, and Farrar. According to Gutierrez, Complainant was not one of the candidates that Steblein recommended and he forwarded the three candidates that Steblein did recommend to Deputy Chief Patrol Agent Ronnie Myers. HT at 37-39.

Steblein testified in his affidavit that Gutierrez was responsible for evaluating and rating the candidates and he did not know how Complainant or the selectees were rated in relation to criteria used to evaluate the candidates. At the hearing, Steblein testified that after Gutierrez received the list of candidates he called Steblien to his office to look at the list. After examining the list together, Steblein went back to solicit some information from the people in his department about the candidates on the list with whom they were familiar. After soliciting this information and reviewing these applications, Steblein testified that he recommended five candidates to Gutierrez, Noel, Farrar, Tanner, Edmund Carr (an outside candidate), and Complainant, and had no further involvement in the selection process. HT at 19-21. I find that this testimony is not sufficient to provide that

specific, clear and individualized explanation that is required by *Burdine* to explain why Complainant was not selected for these positions. The Commission has clearly held that merely stating that Complainant was not the best qualified for the position does not satisfy the Agency's burden of production. *Boston v. U.S. Postal Service*, EEOC Appeal No. 01A40274 (May 26, 2004). As in *Boston*, the Agency's explanation for failing to select Complainant "is so generalized, conclusory and vaporous as to offer no substantive explanation of the agency's action." *Id.* In addition, like *Boston*, the record does not contain any documentation that would provide a specific basis for the Agency's selection, such as interview notes or a written evaluation of the applicants' particular qualifications. I note that both Steblein and Gutierrez point the finger at each other with regard to who deleted Complainant's name from the list of recommended candidates, with Steblein saying that he recommended Complainant to Gutierrez and Gutierrez saying that he narrowed the list to 5-6 candidates, including Complainant, and that it was Steblein who removed Complainant's name from the running for these positions. Although both witnesses gave a laundry list of factors that they considered when making their determinations, including things like prior experience, appraisals, educational background, and details to the Academy, neither could apply those factors to the candidates and explain the reasons for the recommendations, particularly given the fact that they both claimed to have found Complainant to be among the best-qualified candidates.

Assuming, arguendo, that the Agency articulated a legitimate, nondiscriminatory reason for the non-selection, I find evidence of pretext with regard to that non-selection. In a non-selection case, pretext may be demonstrated in a number of ways, including a showing that the complainant's qualifications are observably superior to those of the selectee. *Bauer v. Bailar*, 647 F.2d 1037, 1048 (10th Cir. 1981). I find Complainant's qualifications to be observably superior to those of Farrar. Complainant had been an employee of the Agency for almost 10 years at the time of the selections in February 2001, with almost 3 years as a Senior Border Patrol Agent. Farrar had less than five years with the Agency at the time of the selections, with less than two years at the GS-11 level. In addition, Complainant has more education than Farrar, with a Bachelor's Degree while Farrar has an Associate's Degree. Second, and more importantly, I note significant discrepancies in the testimony of those management officials involved in the selection process; these discrepancies included

contradictions between witnesses and among the testimony of each witness. For instance, Steblein categorically denied in his affidavit that he was involved in the rating of the candidates and contended that he did not know how Complainant or the selectees rated in relation to the criteria used to evaluate the candidates. Supervisory Border Patrol Agent Eddie Martinez (Hispanic, Catholic) testified in his affidavit, however, that he was called into Steblein's office and shown a list of candidates for the three vacancies and asked for his top three picks. When he later questioned Steblein about the selections, Steblein told him he assigned points to the recommendations of the supervisors, tallied those points up, and recommended those candidates with the top scores. Steblein and Martinez also offered different testimony concerning the existence of cliques at the Academy, with Steblein categorically denying that any cliques existed and Martinez indicating that he believed one clique had colluded to ensure that their candidates were selected and Complainant was not because he was "Eddie's buddy." In addition, there are significant conflicts between Steblein's testimony in his affidavit and his testimony at the hearing. As noted previously, he stated in his affidavit, that he was not responsible for rating or evaluating the candidates and that he did not know how Complainant or the selectees rated in relation to the criteria used to evaluate the candidates. At the hearing, however, he testified that he and Gutierrez discussed the list of candidates and that he then solicited information about the candidates from the other instructors and then reviewed the applications. Following this solicitation of information and review of the applications, he recommended five candidates. In addition, he stated in his affidavit that he understood that Complainant was Hispanic; at the hearing, he testified that he was not sure whether he knew what Complainant's national origin was. Finally, as discussed previously, his testimony differs markedly from that of Gutierrez about the recommendations made and who made the decision not to recommend Complainant, with Gutierrez claiming that Steblein deleted Complainant's name from a short list of 5-6 candidates that he created and Steblein claiming that Complainant's name was on a list of five candidates that he recommended to Gutierrez. Accordingly, I find that Complainant established discrimination with regard to his non-selection for the Supervisory Border Patrol Agent position.

## VII. COMPENSATORY DAMAGES

As relief for the discrimination that he suffered, Complainant requested compensatory damages. Section 102(a) of the Civil Rights Act of 1991 (1991 CRA), 105 Stat. 1071, Pub. L. No. 102-166, codified at 42 U.S.C. § 1981a, authorizes an award of compensatory damages as part of make-whole relief for intentional discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended. Section 1981a(b)(2) indicates that compensatory damages do not include back pay, interest on back pay, or any other type of equitable relief authorized by Title VII. Section 1981a(b)(3) limits the total amount of compensatory damages that may be awarded each complaining party for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, according to the number of individuals employed by the respondent. The limit for a respondent who has more than 500 employees is $300,000. 42 U.S.C. § 1981a(b)(3)(D).

In *Jackson v. U.S. Postal Service*, EEOC Appeal No. 01923399 (November 12, 1992), request for reconsideration denied, EEOC Request No. 05930306 (February 1, 1993), the Commission held that Congress afforded it the authority to award such damages in the administrative process. The United States Supreme Court reached a similar conclusion in *West v. Gibson*, 119 S. Ct. 1906 (1999), holding that the Commission has authority under Title VII to award compensatory damages against federal agencies in employment discrimination cases.

Accordingly, if a complainant has alleged that he is entitled to compensatory damages and the agency or the Commission enters a finding of discrimination, the complainant must be given an opportunity to submit evidence establishing his claim. To receive an award of compensatory damages, a complainant must demonstrate that he has been harmed as a result of the agency's discriminatory action; the extent, nature, and severity of the harm; and the duration or expected duration of the harm. *Rivera v. Department of the Navy*, EEOC Appeal No. 01934156 (July 22, 1994), request for recon. denied, EEOC Request No. 05940927 (December 11, 1995); Compensatory and Punitive Damages Available Under Section 102 of the Civil Rights Act of 1991, EEOC Notice No. N 915.002 at 11-12, 14 (July 14, 1992). "[C]ompensatory damage awards must be limited to the sums

necessary to compensate [a complainant] for actual harm, even if the harm is intangible." Id. at 13 (citing *Carter v. Duncan - Higgins, Ltd.*, 727 F.2d 1225 (D.C. Cir. 1984)). Thus, a compensatory damages award should reimburse a complainant for proven pecuniary losses, future pecuniary losses, and non-pecuniary losses. Pecuniary losses are out-of-pocket expenses, including medical expenses and other quantifiable costs. *See* Compensatory and Punitive Damages Available Under Section 102 of the Civil Rights Act of 1991, at 8. Non-pecuniary losses are those intangible losses, not subject to precise quantification, e.g., emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, injury to professional standing, injury to character and reputation, injury to credit standing, and loss of health. Id. at 10.

At the hearing, Complainant confined his proof to non-pecuniary losses. Complainant testified that after he learned he was not selected, he was angry and bitter and suffered a loss of self-worth. He explained that a lot of his self-worth was tied to his work as an instructor and that he was depressed when he did not get an instructor position. Complainant explained that he and his wife had looked forward to moving to Charleston from El Paso, Texas, and improving the quality of life for their family. After not receiving the job, he was so demoralized that he looked for other avenues to improve the quality of their life, including looking for work elsewhere, *i.e.*, as a teacher or opening up his own business. HT at 90-93.

Complainant's wife, Grace Taylor, also described her husband's anger and bitterness after not being selected. She testified that when he hung up the phone after being notified, he started to cry and that later on his attitude began to change. For example, she testified that he did not want to exercise and stay in shape like he had before. Mrs. Taylor testified that things got worse when they went back to El Paso; she described him as becoming "verbal" with her and their son, as getting upset about every little thing. She described an occasion where their son asked her not to leave him alone with his dad anymore because he was scared of him. Mrs. Taylor also testified to she and her husband's desire to move out of El Paso and improve the quality of their family's life. HT at 82-86.

The Agency offered no evidence to rebut this testimony. This evidence clearly establishes that Complainant suffered emotional harm directly attributable to his non-selection. Accordingly, I find that Complainant is entitled to an award of compensatory damages. Having determined that Complainant proved that he suffered emotional distress causally connected to Agency action, I must next determine the amount of compensatory damages to be awarded for that harm. In determining the amount of a compensatory damages award, I am guided by the principle that such an award is limited to the sums necessary to compensate Complainant for the actual harm caused by the Agency's discriminatory action and must attempt to affix a reasonable dollar value to compensate him for that portion of his emotional distress that was caused by the Agency's discrimination. EEOC Notice No. N 915.002 at 13.

It is a Commission goal to make damage awards for emotional harm consistent with awards in similar cases. *Chow v. Department of the Army*, EEOC Appeal No. 01981308 (August 5, 1999). In *Terrell v. Department of Housing and Urban Development*, EEOC Appeal No. 01961030 (October 25, 1996), request for recon. denied, EEOC Request No. 05970336 (November 20, 1997), the Commission awarded $25,000.00 in non-pecuniary damages resulting from the complainant's non-selection based on "quite serious" emotional harm lasting upwards of two years, frequent crying, introversion, disruptions in relationships with family and friends, suicidal thoughts, depression, sleep problems, and exacerbation of marital and financial difficulties, although the majority of the complainant's problems were not caused by the discrimination. In *Garrett v. U.S. Postal Service*, EEOC Appeal No. 07A30024 (February 25, 2004), the Commission awarded $35,000.00 in non-pecuniary damages where the Agency's discriminatory conduct caused Complainant to suffer emotional distress, depression, anger, embarrassment, and humiliation.

Having carefully considered the facts of this case, I find that Complainant is entitled to non-pecuniary damages in the amount of $35,000.00. In reaching this amount, I have considered a number of factors. First, I considered the nature and severity of Complainant's emotional distress and related symptoms, including his emotional distress and upset, anger and bitterness, and weight gain. I have also considered the fact that Complainant has offered no objective evidence to

corroborate his claim, aside from his own testimony and the testimony of his wife. Finally, I considered the amounts awarded in similar cases. Based on these considerations, I find that $35,000.00 is a proper award for the non-pecuniary damages which Complainant has suffered.

## Conclusion

I find that Complainant proved, by a preponderance of the evidence, that he was discriminated against as alleged.

## Remedy

I find the following relief is appropriate:

(1) The Agency shall appoint Complainant to the Supervisory Border Patrol Agent, GS-1896-12, position in Charleston, South Carolina, or other location agreeable to Complainant, retroactive to June 3, 2001, with relocation expenses.

(2) The Agency shall determine the appropriate amount of back-pay with interest and other benefits due Complainant for the period from June 3, 2001, pursuant to 29 C.F.R. § 1614.501, and tender that amount to Complainant. Complainant shall cooperate in the Agency's efforts to compute the amount of back pay and benefits due, and shall provide all relevant information requested by the Agency.

(3) The Agency shall tender to Complainant non-pecuniary compensatory damages in the amount of $35,000.00.

(4) The Agency shall post a notice that discrimination has been found to have occurred at its Border Patrol Academy, Charleston, South Carolina.

NOTICE

This is a decision by an Equal Employment Opportunity Commission Administrative Judge issued pursuant to C.F.R. §1614.109(b), 109(g) or 109(i). **With the exception detailed below, the complainant may not appeal to the Commission directly from this decision.** EEOC regulations require the Agency to take final action on the complaint by issuing a final order notifying the complainant whether or not the Agency will fully implement this decision within forty (40) calendar days of receipt of the hearing file and this decision. The complainant may appeal to the Commission within thirty (30) calendar days of receipt of the Agency's final order. The complainant may file an appeal whether the Agency decides to fully implement this decision or not.

The Agency's final order shall also contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit and the applicable time limits for such appeal or lawsuit. If the final order does not fully implement this decision, the Agency must also simultaneously file an appeal to the Commission in accordance with 29 C.F.R. §1614.403, and append a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached. A copy of the final order shall also be provided by the Agency to the Administrative Judge.

If the Agency has not issued its final order within forty (40) calendar days of its receipt of the hearing file and this decision, the complainant may file an appeal to the Commission directly from this decision. In this event, a copy of the Administrative Judge's decision should be attached to the appeal. The complainant should furnish a copy of the appeal to the Agency at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the Agency.

All appeals to the Commission must be filed by mail, personal delivery or facsimile to the following address:

Director
Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848, Washington, D.C. 20036
Fax No. (202)663-7022

Facsimile transmissions over 10 pages will not be accepted.

COMPLIANCE WITH AN AGENCY FINAL ACTION

An Agency's final action that has not been the subject of an appeal to the Commission or civil action is binding on the Agency. See 29 C.F.R. §1614.504. If the complainant believes that the Agency has failed to comply with the terms of its final action, the complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within thirty (30) calendar days of when the complainant knew or should have known of the alleged noncompliance. The Agency shall resolve

the matter and respond to the complainant in writing. If the complainant is not satisfied with the Agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action. The complainant may file such an appeal within thirty (30) calendar days of receipt of the Agency's determination or, in the event that the Agency fails to respond, at least thirty-five (35) calendar days after complainant has served the Agency with the allegations of noncompliance. A copy of the appeal must be served on the Agency, and the Agency may submit a response to the Commission within thirty (30) calendar days of receiving the notice of appeal.

Kelly A. Davis
Kelly A. Davis
Administrative Judge

July 15, 2004
Date

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 19848**
**Washington, D.C. 20036**

**Humphrey A. Taylor,**
**Complainant,**

**v.**

**Michael Chertoff,**
**Secretary,**
**Department of Homeland Security,**
**(U.S. Customs and Border Protection),**
**Agency.**

**Appeal No. 01A50066**

**Agency No. 1-02-H026**

**Hearing No. 140-2003-08401X**

**DECISION**

Complainant initiated an appeal from an Administrative Judge's (AJ) decision finding discrimination concerning his equal employment opportunity (EEO) complaint of unlawful employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq*. The appeal is accepted pursuant to 29 C.F.R. § 1614.405.

Complainant, a Senior Patrol Agent, GS-1896-11, employed at the agency's El Paso, Texas Station, filed a formal EEO complaint on December 5, 2001, alleging that the agency discriminated against him on the bases of race (Hispanic) and religion (Baptist) when:

> he was not selected for the position of Supervisory Border Patrol Agent, GS-1896-12, pursuant to Vacancy Announcement Nos. HQ-00-46-007 and HQ-00-46-009.

At the conclusion of the investigation, complainant received a copy of the investigative report and requested a hearing before an EEOC Administrative Judge (AJ). Following a hearing, the AJ issued a decision finding discrimination.

In her decision, the AJ concluded that complainant established a *prima facie* case of race and religion discrimination when he was not selected for the vacancy in question. The AJ found that the agency failed to articulate legitimate, non-discriminatory reasons for its actions when it stated that he was not the best qualified for the position. The AJ concluded that complainant established

Exhibit C-2

that more likely than not, the reasons provided by the agency were a pretext for discrimination. In reaching this conclusion, the AJ found that complainant had superior qualifications to the selectee, in that complainant had more years of work experience and more education background. The AJ also found that there were significant discrepancies in the testimony of the management officials.

The agency did not issue a final decision. Because the agency did not issue a final order within 40 days of receipt of the AJ's decision, the Commission determines that the AJ's decision is the final action of the agency. 29 C.F.R. § 1614.109(i).

On appeal, complainant, through his representative, contends that more than 40 calendar days elapsed, the agency was in non-compliance for failing to issue a final decision.

As an initial matter, the Commission notes that the hearing in this case was held by telephone, without the objection of the parties. The Commission has held that testimony may not be taken by telephone in the absence of exigent circumstances, unless at the join request of the parties and provided that specified conditions have been met. *See Louthen v. United States Postal Service*, EEOC Appeal No. 01A44521 (May 17, 2006).[1] However, because the facts of this case pre-date *Louthen*, we will assess the propriety of conducting the hearing telephonically by considering the totality of the circumstances. Here, it is unclear whether exigent circumstances existed. On the other hand, it is clear that there were no issues of witness credibility that might have been impacted by the taking of testimony telephonically. Specifically, after the AJ held a telephone hearing and found discrimination, the agency did not issue a final decision. As discussed above, the Commission determines that the AJ's decision constitutes the agency's final action. The instant appeal, filed by complainant, is based solely upon the assertion that the agency is in non-compliance due to its failure to issue a final decision. Under these circumstances, even if it is assumed that the AJ abused her discretion in this case by taking testimony telephonically, the Commission finds that her action constituted harmless error.

---

[1]In *Louthen*, the Commission has promulgated its policy regarding the taking of telephonic testimony in the future by setting forth explicit standards and obligations on its Administrative Judges and the parties. *Louthen* requires either a finding of exigent circumstances or a joint and voluntary request by the parties with their informed consent. When assessing prior instances of telephonic testimony, the Commission will determine whether an abuse of discretion has occurred by considering the totality of the circumstances. In particular, the Commission will consider factors such as whether there were exigent circumstances, whether a party objected to the taking of telephonic testimony, whether the credibility of any witnesses testifying telephonically is at issue, and the importance of the testimony given telephonically. Further, where telephonic testimony is improperly taken, the Commission will scrutinize the evidence of record to determine whether the error was harmless, as is found in this case." *Sotomayor v. Department of the Army*, EEOC Appeal No. 01A43440 (May 17, 2006).

Pursuant to 29 C.F.R. § 1614.405(a), all post-hearing factual findings by an AJ will be upheld if supported by substantial evidence in the record. Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. National Labor Relations Board*, 340 U.S. 474, 477 (1951) (citation omitted). A finding regarding whether or not discriminatory intent existed is a factual finding. *See Pullman-Standard Co. v. Swint*, 456 U.S. 273, 293 (1982). An AJ's conclusions of law are subject to a *de novo* standard of review, whether or not a hearing was held.

After a careful review of the record, we discern no basis to disturb the AJ's finding of discrimination. The findings of fact are supported by substantial evidence in the record and the AJ correctly applied the appropriate regulations, policies, and laws. The Commission **AFFIRMS** the agency's final action. To the extent that it has not already done so, the agency is directed to take corrective action, as slightly modified by the Commission herein, in accordance with this decision and the **ORDER** below.

## ORDER

To the extent it has not already done so, the agency is ordered to take the following remedial action:

1. The agency shall appoint complainant to the Supervisory Border Patrol Agent, GS-1896-12, position in Charleston, South Carolina, or other location agreeable to complainant, retroactive to June 3, 2001, with relocation expenses.

2. The agency shall determine the appropriate amount of back pay, with interest, and other benefits due complainant for the period from June 3, 2001, pursuant to 29 C.F.R. § 1614.501, and tender that amount to Complainant, no later than sixty (60) calendar days after the date this decision becomes final. The complainant shall cooperate in the agency's efforts to compute the amount of back pay and benefits due, and shall provide all relevant information requested by the agency.

3. The agency shall tender to complainant non-pecuniary compensatory damages in the amount of $35,000.00.

4. Within sixty (60) calendar days after the date that this decision becomes final, the agency shall take corrective, curative and preventive action to ensure that discrimination does not recur. This includes, but is not limited to, training for the relevant management officials regarding their responsibilities with respect to eliminating discrimination in the federal workplace.

5. Within thirty (30) calendar days after the date that this decision becomes final, the agency shall consider taking appropriate disciplinary action against the responsible management officials. The Commission does not consider training to be disciplinary action. The agency shall report its decision to the compliance officer. If the agency decides to take disciplinary action, it shall identify the action taken. If the agency decides not to take disciplinary action, it shall set forth the reason(s) for its determination not to impose discipline. If any of the responsible management officials have left the agency's employ, the agency shall furnish documentation of the departure date(s).

6. The agency shall post a notice that discrimination has been found to have occurred at its facility in Charleston, South Carolina in accordance with the posting order below.

The agency is further directed to submit a report of compliance, as provided in the statement entitled "Implementation of the Commission's Decision." The report shall include supporting documentation of the agency's calculation of back pay and other benefits due complainant, including evidence that the corrective action has been implemented.

## POSTING ORDER (G0900)

The agency is ordered to post at its Border Patrol Academy in Charleston, South Carolina, copies of the attached notice. Copies of the notice, after being signed by the agency's duly authorized representative, shall be posted by the agency within thirty (30) calendar days of the date this decision becomes final, and shall remain posted for sixty (60) consecutive days, in conspicuous places, including all places where notices to employees are customarily posted. The agency shall take reasonable steps to ensure that said notices are not altered, defaced, or covered by any other material. The original signed notice is to be submitted to the Compliance Officer at the address cited in the paragraph entitled "Implementation of the Commission's Decision," within ten (10) calendar days of the expiration of the posting period.

## ATTORNEY'S FEES (H0900)

If complainant has been represented by an attorney (as defined by 29 C.F.R. § 1614.501(e)(1)(iii)), he/she is entitled to an award of reasonable attorney's fees incurred in the processing of the complaint. 29 C.F.R. § 1614.501(e). The award of attorney's fees shall be paid by the agency. The attorney shall submit a verified statement of fees to the agency -- not to the Equal Employment Opportunity Commission, Office of Federal Operations -- within thirty (30) calendar days of this decision becoming final. The agency shall then process the claim for attorney's fees in accordance with 29 C.F.R. § 1614.501.

## IMPLEMENTATION OF THE COMMISSION'S DECISION (K0501)

Compliance with the Commission's corrective action is mandatory. The agency shall submit its compliance report within thirty (30) calendar days of the completion of all ordered corrective action. The report shall be submitted to the Compliance Officer, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. The agency's report must contain supporting documentation, and the agency must send a copy of all submissions to the complainant. If the agency does not comply with the Commission's order, the complainant may petition the Commission for enforcement of the order. 29 C.F.R. § 1614.503(a). The complainant also has the right to file a civil action to enforce compliance with the Commission's order prior to or following an administrative petition for enforcement. *See* 29 C.F.R. §§ 1614.407, 1614.408, and 29 C.F.R. § 1614.503(g). Alternatively, the complainant has the right to file a civil action on the underlying complaint in accordance with the paragraph below entitled "Right to File A Civil Action." 29 C.F.R. §§ 1614.407 and 1614.408. A civil action for enforcement or a civil action on the underlying complaint is subject to the deadline stated in 42 U.S.C. 2000e-16(c) (1994 & Supp. IV 1999). If the complainant files a civil action, the administrative processing of the complaint, including any petition for enforcement, will be terminated. *See* 29 C.F.R. § 1614.409.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision or **within twenty (20) calendar days** of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

<u>COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION</u> (R0900)

This is a decision requiring the agency to continue its administrative processing of your complaint. However, if you wish to file a civil action, you have the right to file such action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. In the alternative, you may file a civil action **after one hundred and eighty (180) calendar days** of the date you filed your complaint with the agency, or filed your appeal with the Commission. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. **Filing a civil action will terminate the administrative processing of your complaint.**

<u>RIGHT TO REQUEST COUNSEL</u> (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden

Carlton M. Hadden, Director
Office of Federal Operations

MAY 3 1 2006

Date

## CERTIFICATE OF MAILING

For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:

MAY 3 1 2006

Date

Equal Opportunity Assistant

LAW OFFICE OF
**LORENZO W. TIJERINA**
Telephone No. (210) 231-0112 1911 Guadalupe Street Facsimile No. (210) 212-7215
San Antonio, Texas 78207
MEMBER OF THE COMMONWEALTH OF PENNSYLVANIA BAR
Mailing Address: P.O. Box 830922, San Antonio, Texas 78283-0922
NOT LICENSED TO PRACTICE BEFORE THE SUPREME COURT OF TEXAS
PRACTICE LIMITED TO ONLY FEDERAL MATTERS

November 18, 2006

Director of the US Equal Employment
Commission
129 West Trade Street, Suite 400
Charlotte, NC 28202

- and -

Mr. Robert H. Humphries,
Assistant Chief Counsel
Customs and Border Protection
9434 Viscount Blvd., Suite 200
El Paso, Texas 79925

*RE:* *<u>Humphrey A. Taylor v. Thomas J. Ridge, Secretary of the Department of Homeland Security</u>, EEOC No. 140-2003-08401X, Agency No. I-02-H026, Request No. 05A60903, Notice of the Agency's Non-compliance*

Dear Director:

This letter is to formally introduce the undersigned as Mr. Humphrey A. Taylor's counsel and to formally allege that the Agency has not complied with the Decision of the US Equal Employment Opportunity Commission's (EEOC) Administrative Judge (AJ) Kelly A. Davis issued on July 15, 2004, and the affirmation of said Decision by the Office of Federal Operations (OFO) issued on August 31, 2006. (*See* attached copy of the OFO's Holding).

Pursuant to *29 CFR § 1614.504(b)*, Mr. Taylor must formally inform the EEOC's Director of the DHS' failure to comply with all the specific expressed language of the AJ's Decision and the OFO's Holding in order to exhaust all administrative remedies/procedures before the EEOC. Accordingly, please accept this letter as notice upon the EEOC and the DHS' representative of the DHS's failure to comply with the mandates of the EEOC and the OFO. Effectively, the DHS has thirty (30) calendar days from receipt of Mr. Taylor's allegations of non-compliance to respond and/or cure. For the record, the undersigned has been instructed to seek judicial relief if the DHS fails to immediately commence paying Mr. Taylor all his monetary damages.

We await the EEOC's and/or the DHS's response.

Respectfully,

Lorenzo W. Tijerina

LWT:ang
Enclosures: a/s
cc: Mr. Humphrey A. Taylor

***<u>SERVED VIA THE US POSTAL SERVICE, CERTIFIED RETURN RECEIPT</u>***

Exhibit C-3