**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**717 Madison Place, NW, Room 101**
**Washington, DC 20005**

| | | |
|---|---|---|
| **HUMPHREY A. TAYLOR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **- v. -** | ) | **No. 07-230C (Judge Horn)** |
| | ) | |
| **THE UNITED STATES OF AMERICA,** | ) | |
| | ) | **July 20, 2007** |
| **Defendant.** | ) | |

**PLAINTIFF'S RESPONSE TO THE**
**DEFENDANT'S MOTION TO DISMISS**

1. *Comes now*, the Plaintiff, Humphrey A. Taylor, through his undersigned counsel to formally respond to the Defendant's, the United States of America's (USA), motion to dismiss. Accordingly, the Plaintiff responds as follows:

## I. *Procedural History*

2. On or about July 15, 2004, the United States Equal Employment Opportunity Commission's (EEOC) Administrative Law Judge (ALJ), in *Humphrey A. Taylor v. Thomas J. Ridge, Secretary of the Department of Homeland Security*, EEOC No. 140-2003-08401X, Agency No. I-02-H026, awarded the Plaintiff ***compensatory damages*** in the form of back pay from June 3, 2001, pursuant to *5 CFR § 550.805* and *29 CFR § 1614.501—.505*, which the US Department of Homeland Security (DHS) was mandated to immediately tender, and ***non-pecuniary compensatory damages*** in the amount of thirty five thousand dollars ($35,000.00). The DHS was ordered to immediately promote the Plaintiff to an instructor's position at the Federal Law Enforcement Training Center (FLETC) to which the Plaintiff had been discriminated against by not being initially selected as an instructor. Instead of complying with any part of the ALJ's decision, the

DHS elected to timely appeal the ALJ's decision to the EEOC's Office of Federal Operations (OFO). (*See* Exhibit marked C-1, copy of the EEOC's ALJ's decision dated July 15, 2004, filed with the Plaintiff's initial Complaint).

3. On or about June 2, 2002, all the instructors GS-12 positions were upgraded to GS-13s. (*See* Exhibit marked C-4, a copy of facsimile transmission illustrating the pay scales the Plaintiff was entitled had he been promoted pursuant to *29 CFR §§ 1614.501—.505*).

4. On May 31, 2006, the OFO rendered its decision affirming the EEOC's ALJ's decision and award. The appeal to the OFO was initiated by the DHS. The OFO specifically ordered the DHS to comply with the EEOC's ALJ's decision:

> (1) ***The Agency shall appoint Complainant to the Supervisory Border Patrol Agent, GS-1896-12***, position in Charleston, South Carolina, or other location agreeable to Complainant, retroactive to June 3, 2001, with relocation expenses. (***Emphasis Added***).
>
> (2) ***The Agency shall determine the appropriate amount of back pay with interest and other benefits due Complainant for the period from June 3, 2001***, pursuant to *29 C.F.R. § 1614.501*, and tender that amount to Complainant, no later than sixty (60) calendar days after the date this decision becomes final. The Complainant shall cooperate in the Agency's efforts to compute the amount of back pay and benefits due, and shall provide all relevant information requested by the Agency. (***Emphasis Added***).
>
> (3) ***The Agency shall tender to Complainant non-pecuniary compensatory damages in amount of $35,000.00***. (***Emphasis Added***).
>
> (4) Within sixty (60) calendar days after the date that this decision becomes final, ***the Agency shall take corrective, curative and preventive action to ensure that discrimination does not recur***. This includes, but is not limited to, training for the relevant (***Emphasis Added***).

(*See* Exhibit marked C-2, a copy of the OFO's order dated May 31, 2006, filed with the Plaintiff's Initial Complaint).

5. On or about June 30, 2006, the Defendant filed a motion for reconsideration before the OFO, which triggered the Plaintiff's undersigned counsel to respond by moving to dismiss the Defendant's motion as vacuous and fundamentally defective at law and in-fact.

6. On or about August 31, 2006, the OFO granted the Plaintiff's motion to dismiss the Defendant's motion for reconsideration and affirmed the EEOC's ALJ's decision dated July 15, 2004.

7. After the Defendant's failure to pay the award as ordered by the OFO, on or about September 23, 2006, the undersigned posted a letter demanding that the Defendant pay as ordered. (*See* Exhibit marked C-3, copy of the Plaintiff's demand letter posted to the Defendant and the EEOC, filed with the Plaintiff's initial Complaint).

8. In February 2007, the Plaintiff received his non-pecuniary compensatory damages in the amount of $35,000.00; but, did not receive his back pay with interest or his promotion to a GS-12 as ordered by the EEOC's ALJ and the OFO's affirmation.

9. On or about April 9, 2007, the Plaintiff filed his initial Complaint before this Court claiming only ***monetary damages*** in the form of back pay from June 3, 2001 to the present, pursuant to *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*, that was to be tendered immediately.

## II. *Operative Facts*

10. The fact is as of this date the DHS has failed to timely perform as ordered by the OFO, and mandated by *5 CFR § 550.805* and *29 CFR § 1614.501—.505*. The DHS continues to owe the Plaintiff his back and front pay, with interest and promote the

Plaintiff as ordered pursuant to the EEOC's ALJ's order, the OFO's affirmation, and *5 CFR § 550.805* and *29 CFR § 1614.501—.505.*

## III. *Issue(s)*

11. The principal issue before the Bar is whether or not the US Court of Federal Claims has subject matter jurisdiction over the Plaintiff's claims against the US.

## IV. *Applicable Standards*

12. This court has jurisdiction over the subject matter of this action pursuant to the *Tucker Act, Title 28 USC § 1491.*

> *Title 28 USC § 1491. Claims against United States generally; actions involving Tennessee Valley Authority*
>
> (a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort. For the purpose of this paragraph, an express or implied contract with the Army and Air Force Exchange Service, Navy Exchanges, Marine Corps Exchanges, Coast Guard Exchanges, or Exchange Councils of the National Aeronautics and Space Administration shall be considered an express or implied contract with the United States.
>
> (2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. The Court of Federal Claims shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the

Contract Disputes Act of 1978, including a dispute concerning termination of a contract, rights in tangible or intangible property, compliance with cost accounting standards, and other nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of that Act.

(b)(1) Both the Unites States Court of Federal Claims and the district courts of the United States shall have jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. Both the United States Court of Federal Claims and the district courts of the United States shall have jurisdiction to entertain such an action without regard to whether suit is instituted before or after the contract is awarded.

(2) To afford relief in such an action, the courts may award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs.

(3) In exercising jurisdiction under this subsection, the courts shall give due regard to the interests of national defense and national security and the need for expeditious resolution of the action.

(4) In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.

(c) Nothing herein shall be construed to give the United States Court of Federal Claims jurisdiction of any civil action within the exclusive jurisdiction of the Court of International Trade, or of any action against, or founded on conduct of, the Tennessee Valley Authority, or to amend or modify the provisions of the Tennessee Valley Authority Act of 1933 with respect to actions by or against the Authority.

13. *5 CFR § 550.805, Back pay computations*, specifically provides that:

(a) When an appropriate authority corrects or directs the correction of an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentials otherwise due an employee—

(1) The employee shall be deemed to have performed service for the agency during the period covered by the corrective action; and

(2) The agency shall compute for the period covered by the corrective action the pay, allowances, and differentials the employee would have received if the unjustified or unwarranted personnel action had not occurred.

(b) No employee shall be granted more pay, allowances, and differentials under section 5596 of title 5, United States Code, and this subpart than he or she would have been entitled to receive if the unjustified or unwarranted personnel action had not occurred.

(c) Except as provided in paragraph (d) of this section, in computing the amount of back pay under section 5596 of title 5, United States Code, and this subpart, an agency may not include—

(1) Any period during which an employee was not ready, willing, and able to perform his or her duties because of an incapacitating illness or injury; or

(2) Any period during which an employee was unavailable for the performance of his or her duties for reasons other than those related to, or caused by, the unjustified or unwarranted personnel action.

(d) In computing the amount of back pay under section 5596 of title 5, United States Code, and this subpart, an agency shall grant, upon request of an employee, any sick or annual leave available to the employee for a period of incapacitation if the employee can establish that the period of incapacitation was the result of illness or injury.

(e) In computing the net amount of back pay payable under section 5596 of title 5, United States Code, and this subpart, an agency must make the following offsets and

deductions (in the order shown) from the gross back pay award:

(1) Any outside earnings (gross earnings less any associated business losses and ordinary and necessary business expenses) received by an employee for other employment (including a business enterprise) undertaken to replace the employment from which the employee was separated by the unjustified or unwarranted personnel action during the interim period covered by the corrective action. Do not count earnings from additional or "moonlight" employment the employee may have engaged in while Federally employed (before separation) and while erroneously separated.

(2) Any erroneous payments received from the Government as a result of the unjustified or unwarranted personnel action, which, in the case of erroneous payments received from a Federal employee retirement system, must be returned to the appropriate system. Such payments must be recovered from the back pay award in the following order:

(i) Retirement annuity payments (i.e., gross annuity less deductions for life insurance and health benefits premiums, if those premiums can be recovered by the affected retirement system from the insurance carrier);

(ii) Refunds of retirement contributions (i.e., gross refund before any deductions);

(iii) Severance pay (i.e., gross payments before any deductions); and

(iv) A lump-sum payment for annual leave (i.e., gross payment before any deductions).

(3) Authorized deductions of the type that would have been made from the employee's pay (if paid when properly due) in accordance with the normal order of precedence for deductions from pay established by the agency, subject to any applicable law or regulation, including, but not limited to, the following types of deductions, as applicable:

(i) Mandatory employee retirement contributions toward a defined benefit plan, such as the Civil Service Retirement System or the defined benefit component of the Federal Employees Retirement System;

(ii) Social Security taxes and Medicare taxes;

(iii) Health benefits premiums, if coverage continued during a period of erroneous retirement (with paid premiums recoverable by the retirement system) or is retroactively reinstated at the employee's election under 5 U.S.C. 8908(a); (iv) Life insurance premiums if—

(A) Coverage continued during a period of erroneous retirement;

(B) Coverage was stopped during an erroneous suspension or separation and the employee suffered death or accidental dismemberment during that period (consistent with 5 U.S.C. 8706(d)); or

(C) Additional premiums are owed because of a retroactive increase in basic pay; and

(v) Federal income tax withholdings. (NOTE TO PARAGRAPH (E)(3): See appendix A to this subpart for additional information on computing certain deductions.) (4) Administrative offsets under 31U.S.C. 3716 to recover any other outstanding debt(s) owed to the Federal Government by the employee, as appropriate.

(f) For the purpose of computing the amount of back pay under paragraph (e) of this section, interest shall be included in the amount from which deductions for erroneous payments are made, as required by § 550.805(e)(2) of this part.

(g) An agency shall credit annual leave restored to an employee as a result of the correction of an unjustified or unwarranted personnel action in excess of the maximum leave accumulation authorized by law to a separate leave account for use by the employee. The employee shall schedule and use annual leave in such a separate leave account as follows:

(1) A full-time employee shall schedule and use excess annual leave of 416 hours or less by the end of the leave year in progress 2 years after the date on which the annual leave is credited to the separate account. The agency shall extend this period by 1 leave year for each additional 208 hours of excess annual leave or any portion thereof.

(2) A part-time employee shall schedule and use excess annual leave in an amount equal to or less than 20 percent of the employee's scheduled tour of duty over a period of 52 calendar weeks by the end of the leave year in progress 2 years after the date on which the annual leave is credited to the separate account. The agency shall extend this period by 1 leave year for each additional number of hours of excess annual leave, or any portion thereof, equal to 10 percent of the employee's scheduled tour of duty over a period of 52 calendar weeks.

(h) Agencies must correct errors that affect an employee's Thrift Savings Plan account consistent with regulations prescribed by the Federal Retirement Thrift Investment Board.

14. *29 CFR § 1614.501, Remedies and relief*, specifically provides that:

(c) Relief for an employee. When an agency, or the Commission, finds that an employee of the agency was discriminated against, the agency shall provide relief, which shall include, but need not be limited to, one or more of the following actions:

(1) Nondiscriminatory placement, with back pay computed in the manner prescribed by 5 CFR 550.805, unless clear and convincing evidence contained in the record demonstrates that the personnel action would have been taken even absent the discrimination. Interest on back pay shall be included in the back pay computation where sovereign immunity has been waived. The back pay liability under title VII or the Rehabilitation Act is limited to two years prior to the date the discrimination complaint was filed.

(2) If clear and convincing evidence indicates that, although discrimination existed at the time the personnel action was taken, the personnel action would have been taken even absent discrimination, the agency shall

nevertheless eliminate any discriminatory practice and ensure it does not recur.

(3) Cancellation of an unwarranted personnel action and restoration of the employee.

(4) Expunction from the agency's records of any adverse materials relating to the discriminatory employment practice.

(5) Full opportunity to participate in the employee benefit denied (e.g., training, preferential work assignments, overtime scheduling).

(d) The agency has the burden of proving by a preponderance of the evidence that the complainant has failed to mitigate his or her damages.

(e) Attorney's fees or costs--(1) Awards of attorney's fees or costs. The provisions of this paragraph relating to the award of attorney's fees or costs shall apply to allegations of discrimination prohibited by title VII and the Rehabilitation Act. In a decision or final action, the agency, administrative judge, or Commission may award the applicant or employee reasonable attorney's fees (including expert witness fees) and other costs incurred in the processing of the complaint.

(i) A finding of discrimination raises a presumption of entitlement to an award of attorney's fees.

(ii) Any award of attorney's fees or costs shall be paid by the agency.

(iii) Attorney's fees are allowable only for the services of members of the Bar and law clerks, paralegals or law students under the supervision of members of the Bar, except that no award is allowable for the services of any employee of the Federal Government.

(iv) Attorney's fees shall be paid for services performed by an attorney after the filing of a written complaint, provided that the attorney provides reasonable notice of representation to the agency, administrative judge or Commission, except that fees are allowable for a reasonable period of time prior to the notification of

representation for any services performed in reaching a determination to represent the complainant. Agencies are not required to pay attorney's fees for services performed during the pre-complaint process, except that fees are allowable when the Commission affirms on appeal an administrative judge's decision finding discrimination after an agency takes final action by not implementing an administrative judge's decision. Written submissions to the agency that are signed by the representative shall be deemed to constitute notice of representation.

(2) Amount of awards.

(i) When the agency, administrative judge or the Commission determines an entitlement to attorney's fees or costs, the complainant's attorney shall submit a verified statement of attorney's fees (including expert witness fees) and other costs, as appropriate, to the agency or administrative judge within 30 days of receipt of the decision and shall submit a copy of the statement to the agency. A statement of attorney's fees and costs shall be accompanied by an affidavit executed by the attorney of record itemizing the attorney's charges for legal services. The agency may respond to a statement of attorney's fees and costs within 30 days of its receipt. The verified statement, accompanying affidavit and any agency response shall be made a part of the complaint file.

(ii) (A) The agency or administrative judge shall issue a decision determining the amount of attorney's fees or costs due within 60 days of receipt of the statement and affidavit. The decision shall include a notice of right to appeal to the EEOC along with EEOC Form 573, Notice of Appeal/Petition and shall include the specific reasons for determining the amount of the award.

(B) The amount of attorney's fees shall be calculated using the following standards: The starting point shall be the number of hours reasonably expended multiplied by a reasonable hourly rate. There is a strong presumption that this amount represents the reasonable fee. In limited circumstances, this amount may be reduced or increased in consideration of the degree of success, quality of representation, and long delay caused by the agency.

(C) The costs that may be awarded are those authorized by 28 U.S.C. 1920 to include: Fees of the reporter for all or any of the stenographic transcript necessarily obtained for use in the case; fees and disbursements for printing and witnesses; and fees for exemplification and copies necessarily obtained for use in the case.

(iii) Witness fees shall be awarded in accordance with the provisions of 28 U.S.C. 1821, except that no award shall be made for a Federal employee who is in a duty status when made available as a witness.

15. *29 CFR §1614.505, Interim relief.*

(a)(1) When the agency appeals and the case involves removal, separation, or suspension continuing beyond the date of the appeal, and when the administrative judge's decision orders retroactive restoration, the agency shall comply with the decision to the extent of the temporary or conditional restoration of the employee to duty status in the position specified in the decision, pending the outcome of the agency appeal. The employee may decline the offer of interim relief.

(2) Service under the temporary or conditional restoration provisions of paragraph (a)(1) of this section shall be credited toward the completion of a probationary or trial period, eligibility for a within-grade increase, or the completion of the service requirement for career tenure, if the Commission upholds the decision on appeal. Such service shall not be credited toward the completion of any applicable probationary or trial period or the completion of the service requirement for career tenure if the Commission reverses the decision on appeal.

(3) When the agency appeals, it may delay the payment of any amount, other than prospective pay and benefits, ordered to be paid to the complainant until after the appeal is resolved. If the agency delays payment of any amount pending the outcome of the appeal and the resolution of the appeal requires the agency to make the payment, then the agency shall pay interest from the date of the original decision until payment is made.

> (4) The agency shall notify the Commission and the employee in writing at the same time it appeals that the relief it provides is temporary or conditional and, if applicable, that it will delay the payment of any amounts owed but will pay interest as specified in paragraph (b)(2) of this section. Failure of the agency to provide notification will result in the dismissal of the agency's appeal.
>
> (5) The agency may, by notice to the complainant, decline to return the complainant to his or her place of employment if it determines that the return or presence of the complainant will be unduly disruptive to the work environment. However, prospective pay and benefits must be provided. The determination not to return the complainant to his or her place of employment is not reviewable. A grant of interim relief does not insulate a complainant from subsequent disciplinary or adverse action.
>
> (b) If the agency files an appeal and has not provided required interim relief, the complainant may request dismissal of the agency's appeal. Any such request must be filed with the Office of Federal Operations within 25 days of the date of service of the agency's appeal. A copy of the request must be served on the agency at the same time it is filed with EEOC. The agency may respond with evidence and argument to the complainant's request to dismiss within 15 days of the date of service of the request.

## V. ***Defendant's Arguments--Issues***

16. The Defendant proffers five arguments:

A. *This Court Lacks Jurisdiction To Enforce The EEOC Decision*;

B. *Jurisdiction In This Court Requires A Money-mandating Basis*:

C. *The Jurisdiction Of This Court May Be Pre-empted*;

D. *This Court Does Not Possess Jurisdiction Over Mr. Taylor's Claim To Enforce The EEOC Decision*; and,

E. *This Court Does Not Possess Jurisdiction Over A Claim Based Soley Upon The Back Pay Act*

## VI. ***Plaintiff's Responses—Application of the Standards to the Facts***

17. The Plaintiff contends that this Court has jurisdiction grounded on the following rationale: The *Tucker Act* defines the subject matter jurisdiction of the Court of Federal Claims. It states, in pertinent part that:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or ***any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States***, or for liquidated or unliquidated damages in cases not sounding in tort....(*See 28 USC § 1491*]. (***Emphasis Added***).

The Administrative Record (AR) clearly reflects that the DHS was found to have violated the Congressional mandate against discrimination by a Federal agency against the Plaintiff, a Federal employee, as codified at *Title 42 USC § 2000e et seq*.; *5 CFR § 550.805* and *29 CFR* at *§§ 1614.501—.505*; and the decision and order of the EEOC and the OFO, respectively.

Effectively, the issue of discrimination has already been ruled upon by the EEOC and the OFO in favor of the Plaintiff. The issue of discrimination is barred by the doctrine of *res judicata*. The only issues before the Court are the issues of the amount of back and front pay the Plaintiff is entitled to ***collect*** as mandated by the *Federal Statutes*, and the *Code of Federal Regulations*, and, the issue of the Plaintiff's mandated promotion to a GS-12, instructor, that the DHS subsequently up graded for all other instructors to GS-13s.

The Plaintiff's initial Complaint inadvertently invoked the wrong basis for the Court's jurisdiction. The Plaintiff's jurisdiction paragraph should have invoked the Courts jurisdiction *via Title 28 USC § 1491*, *5 CFR § 550.805* and *29 CFR §§*

*1614.501—.505*. (*See* attached copy of the Plaintiff's Amended Complaint at Exhibit C-5). The basis of the Plaintiff's claims before the Court is grounded on an *Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort*. (*See 28 USC § 1491, also see Title 42 USC § 2000e et seq*.; 5 CFR § 550.805 and 29 *CFR §§ 1614.501—.505*; *and* the decision and order of the EEOC and the OFO, respectively).

All the cases cited in the Defendant's argument entitled *Legal Standards For Subject Matter Jurisdiction*, fail to address the fact that the Plaintiff is before the Court pursuant to an *Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort*. (*See 28 USC § 1491, also see Title 42 USC § 2000e et seq*.; *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*).

The facts and law speak for themselves, the Plaintiff is before the Court because the DHS was found liable for engaging in discriminatory practices which Congress prohibited *via Title VII of the Civil Rights Act of 1964*, codified at *Title 42 USC § 2000e et seq*., and both the EEOC and the OFO found the DHS liable to the Plaintiff, and awarded the Plaintiff compensatory damages in the amount of back and front pay; and, mandated that the DHS promote the Plaintiff to a GS-12. (*See 5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*). By the Defendant's own admissions, the DHS is liable to the Plaintiff. (*See 5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*). Furthermore, at p. 3 of the Defendant's motion to dismiss the DHS provides a lame excuse and admits that the reason the Plaintiff has not been made whole as mandated by *5 CFR § 550.805 and 29*

*CFR §§ 1614.501—.505*, is due to the fact that the DHS has had to deal with two different processing centers.

Consequently, as of today, the DHS has not fully complied with the compulsory specific expressed language of *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*.

Effectively, the Plaintiff is before the Court for having his substantive right to work in a non-discriminatory environment with a Federal agency violated by the employing Federal agency, the DHS. *Black's Law Dictionary*, 6th Edition, 1991, defines a substantive right as, *A right to the equal enjoyment of fundamental rights, privileges and immunities; distinguished from procedural rights*. There is no issue before the Court concerning discrimination. (*See 5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*).

As to the Defendant's contention that, *This Court Lacks Jurisdiction to Enforce The EEOC Decision*, the Plaintiff counters as follows: The Defendant argues that *United States v. Sherwood*, at 312 US 584 (1941) and *United States v. Testan*, at 424 US 392 (1976) are applicable in the instant matter. Basically, in *Sherwood* the Supreme Court held that pursuant to the *Tucker Act*, *Congress prescribed that the jurisdiction thus conferred should be concurrent with the Court of Claims*. In *Testan*, the Supreme Court held that, *There is a difference between a prospective reclassification, on one hand, and retroactive reclassification resulting in money damages, on the other*. Before the Bar, the Plaintiff was and continues to be an employee of the DHS, who has retroactive substantive rights to a GS-12 position, pursuant to the specifically expressed language of *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*.

Effectively, the facts and law reflects that the Plaintiff has a retroactive substantive right to his back and front pay as well as to the GS-12 position as mandated

by *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*.

As to the Plaintiff's response to the Defendant's contention that, *Jurisdiction To This Court Requires A Money-mandating Basis*, the Plaintiff counters as follows: In the Plaintiff's initial Complaint at ¶¶ 14 and 15, the Plaintiff makes a monetary claim pursuant to *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*:

> 14. Effectively, the Complainant alleges that the DHS owes the Complainant not less than ninety four thousand three hundred sixty six dollars ($94,366.00) summarily calculated as follows:

| | |
|---|---|
| $ 2,856.00 | for the year 2001, interest and retirement benefits ***not*** included |
| 14,729.00 | for the year 2002, interest and retirement benefits ***not*** included |
| 15,988.00 | for the year 2003, interest and retirement benefits ***not*** included |
| 18,941.00 | for the year 2004, interest and retirement benefits ***not*** included |
| 20,272.00 | for the year 2005, interest and retirement benefits ***not*** included |
| 21,580.00 | for the year 2006, interest and retirement benefits ***not*** included |
| ***$ 94,366.00*** | ***Minimum Total Due in Back Pay without interest and retirement benefits do not include 2007 calculations.*** |

> 15. The estimated $94,366.00 does not include interest to be taxed by the Court. Nor, does the $94,366.00 include the current cost and expense for the present litigation before this Court. Said cost and expense is contracted on a contingent bases at thirty three percent (33%) of the total amount of back pay, with interest, and other benefits due the Complainant.

Here, DHS grounds its argument on *Kokkonen v. Guardian Life Ins. Co. of Am*, 511 US 375, where the issue that the Supreme Court had before it was one having to do with the US district court's ancillary jurisdiction in a ***settlement dispute*** where the parties initially settled their dispute before the US district court. The parties failed to have the US district court retain jurisdiction in case of a breach of the settlement agreement. The Supreme Court held that in a settlement agreement, absent the specific language providing the US district court with jurisdiction in case of a breach, the US district did not have jurisdiction to reopen a dispute.

Before the Bar, there is no breach of a settlement agreement at issue. The issue is the DHS' failure to comply with promotion and pay issues as mandated by the *Code of Federal Regulations* at *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*, which outline the requisite steps the DHS ***shall*** take to make the Plaintiff whole.

Effectively, the record reflects that the Plaintiff has a substantive right to his back and front pay as well as to the GS-12 position as mandated by the *Code of Federal Regulations* at *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*.

As to the Plaintiff's response to the Defendant's contention that, *The Jurisdiction Of This Court May Be Pre-empted*, the Plaintiff counters as follows: In *Martinez v. US*, 333 F3d 1295, 1303-04 (Fed. Cir. 2003), this Court held that: *The actions for which the Tucker Act waives sovereign immunity are actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders*. [*See Taylor v. US*, at 73 Fed.Cl. 532 (2006) referring to *Martinez v. US*, 333 F3d 1295, 1303-04 (Fed. Cir. 2003)]. The Plaintiff's claims of back and front pay, and his promotion to a GS-12 are grounded upon his rights pursuant to *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*. There are no issues of discrimination before the Bar. The Plaintiff has exhausted his administrative remedies. He has made demand that the DHS comply with the specifically mandated express language of *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*, to no avail. The DHS has seen fit to completely ignore the Plaintiff's undersigned counsel.

As a matter of law, the US district courts may have exclusive jurisdiction over the issues of discrimination as provided by *Title 42 USC § 2000e et seq.*; however, the

Plaintiff's claims before this Court are not issues of discrimination but of monetary damages which have already been awarded and need to be collected by the Plaintiff pursuant to *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*. Consequently, the Plaintiff has met his initial burden as cited in *Tucker*: *actions brought pursuant to money-mandating constitutional provisions, statutes, regulations, or executive orders*. [*See Taylor v. US*, at 73 Fed.Cl. 532 (2006) referring to *Martinez v. US*, 333 F3d 1295, 1303-04 (Fed. Cir. 2003)].

As to the Plaintiff's response to the Defendant's contention that, *This Court Does Not Possess Jurisdiction Over Mr. Taylor's Claim To Enforce The EEOC Decision*, the Plaintiff counters as follows: The Plaintiff is not before the Court asking the Court to find that the DHS has discriminated against him. This issue has been resolved in favor of the Plaintiff by the EEOC and affirmed by the OFO. The Plaintiff is before the Court seeking relief as to his back and front pay, and promotion to a GS-12, pursuant to *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*, the fact that the EEOC and the OFO awarded the Plaintiff back and front pay and a promotion is not at issue. What is at issue is the enforcement of the Plaintiff's back and front pay and promotion to a GS-12, pursuant to *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*. As cited above, *Tucker*, specifically provides that:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or ***any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States***, or for liquidated or unliquidated damages in cases not sounding in tort....(*See 28 USC § 1491*). (***Emphasis Added***).

The Plaintiff contends that *5 CFR § 550.805* and *29 CFR §§ 1614.501—.505*,

provide the Plaintiff with a substantive right to not only his back and front pay as cited in his Complaint but also his promotion to a GS-12, from June 2, 2003 to the present.

As to the Plaintiff's response to the Defendant's contention that, *This Court Does Not Possess Jurisdiction Over A Claim Based Solely Upon The Back Pay Act*, the Plaintiff counters as follows: The Plaintiff has not invoked the *Back Pay Act* at *Title 5 USC § 5596*, as the Defendant proffers. The Plaintiff is invoking his substantive right pursuant to *5 CFR § 550.805 Back pay computations*; and, *29 CFR §§ 1614.501—.505*, as presented above.

## VII. *Conclusion*

18. WHEREFORE, premises considered, the Plaintiff respectfully requests that the Court deny the Defendant's motion to dismiss for lack of subject matter jurisdiction and set the Plaintiff's claim for a hearing on the merits of his claims.

Respectfully submitted,

/s/Lorenzo W. Tijerina
Lorenzo W. Tijerina, Attorney *for*
The Plaintiff, Humphrey A. Taylor
1911 Guadalupe Street
San Antonio, Texas 78207
Telephone No.(210) 231-0112
Facsimile No. (210) 212-7215

## VIII. *Certificate of Service*

I hereby certify that on this July 20, 2007, a copy of the foregoing Plaintiff's Response to the Defendant's Motion to Dismiss was electronically filed. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/Lorenzo W. Tijerina____________